**UNITED STATES of America, Appellee,**

v.

**Cora HALL, Appellant.**

**No. 77–1499.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1977.

Decided Nov. 22, 1977.

Frank C. Hamsher, St. Louis, Mo., for appellant.

James J. Barta, Asst. U. S. Atty., St. Louis, Mo., argued, Barry A. Short (former U. S. Atty.), on brief, for appellee.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

PER CURIAM.

On March 9, 1977 the federal grand jury for the Eastern District of Missouri returned a superseding indictment charging that on or about February 2, 1977 Cora Hall, hereinafter called defendant, unlawfully took, opened, secreted and embezzled a letter addressed to Mamie Brown, 2146 Overlea, St. Louis, Missouri, which letter had been in an authorized depository for mail matter, before the same had been delivered to the person to whom it was directed with the design to obstruct correspondence in violation of 18 U.S.C. § 1702.

The defendant pleaded not guilty and was tried twice before juries with The Honorable James H. Meredith, Chief United States District Judge, presiding. The first trial resulted in a hung jury; the second jury found the defendant guilty, and she was sentenced to imprisonment for a term of four years.[1] The defendant appeals. We affirm.

Defendant does not contend that the evidence was insufficient to sustain the verdict. Her position is simply that the district court erred in admitting certain evidence which will be mentioned in due course. When the evidence is viewed in the light most favorable to the government, as we are required to view it, the facts of the case may be summarized as follows.

Mamie Brown referred to in the indictment has been a Missouri welfare client for a substantial period of time, and the letter addressed to her contained a welfare check payable to her order in the sum of $170.00. Brown had resided at 2146 Overlea up until the late fall or early winter of 1976 when she moved from that particular address to another one on the same block identified as 2120 Overlea. Brown's address was not

---

1. At the time of her sentence defendant was twenty-five years of age and the mother of four children. The transcript of the sentencing proceedings reveals that defendant had a long criminal record, and while the sentence imposed may seem somewhat severe it was within statutory limits and was fully justified by defendant's record.

changed promptly on the records of the Missouri Division of Family Services, and letters containing her checks continued to be mailed to the original address. However, the regular postman on the route knew that Brown had moved and he delivered some checks to her at 2120 Overlea.

Brown and the defendant were acquainted with each other and seem to have been friends until a disagreement arose between them in January, 1977. When Brown moved out of the residence at 2146 Overlea, the defendant and her children moved in. The disagreement between the defendant and Brown involved a pants suit that the defendant had loaned to Brown, and that the defendant claimed that Brown had ruined or at least damaged. The defendant claimed that the garment was worth $169.00, almost exactly the amount of the welfare check payable to Brown.

That check was dated February 1, 1977. It was mailed to Brown from Jefferson City on that date, and the letter containing the check arrived in St. Louis the following day. As it happened, the regular postman serving the 2100 block of Overlea was off duty on that day, and the substitute carrier delivered the letter at the 2146 Overlea address where it fell into the hands of the defendant.

There is no question that the defendant took the check to a neighborhood grocery store, cashed it and devoted the proceeds to her own use. There is also no question that the defendant in order to cash the check signed the name of Mamie Brown on the back of it and then at the request of store personnel signed her own name below that of Brown. Both of the women were customers of the store and both were known to store employees. According to the employee who cashed the check the defendant explained her possession of it by saying that Brown was ill and unable to come to the store at the time.

The theory of the government, which the second jury accepted, was that the defendant had no authority from Mamie Brown to open the letter or cash the check; and that the defendant wrongfully appropriated the

letter, took possession of the check, forged Brown's endorsement on it, and then signed her own name under that of Brown when requested or required to do so by store employees.

At both trials the defendant admitted cashing the check after signing the name of Mamie Brown and her own name as endorsers. She insisted, however, that Brown had acknowledged her liability for the damage to the pants suit and had authorized the defendant to take possession of the check and deal with it and its proceeds in the manner that has been described. Brown emphatically denied that any such things had happened, and the second jury evidently believed her.

It appears that soon after the check was cashed Brown's mother appeared at the store and made some inquiry about the check. The police were notified, and one or more officers appeared at the store. At the request of the store employee the defendant went to the store where she was arrested.

Defendant was interviewed on February 9, 1977 by Fred DeLoch, a Special Investigator of the United States Postal Service. He advised the defendant adequately of her "*Miranda* rights," and took certain handwriting exemplars from her. Those exemplars included depictions of defendant's own name and the name of Mamie Brown. The defendant at first denied to DeLoch that she had had any connection with the Brown check, but later admitted that she had cashed it after signing Brown's name and her own name on the back of the instrument.

The handwriting exemplars were examined by Joseph G. Wichman, a questioned documents examiner in the employ of the government, who is stationed at the Chicago, Illinois Crime Laboratory that is maintained by the Postal Inspection Service. It was the opinion of Wichman that the defendant had signed both of the names appearing on the back of the Brown check, which defendant admitted, and it was his further opinion that the defendant when giving the exemplars to Special Investigator DeLoch had deliberately distorted her

depictions of her own name and that of Mamie Brown.

Over the objections of the defendant made at both trials the exemplars that she had supplied to DeLoch were admitted in evidence, and DeLoch and Wichman were permitted to testify with respect to them with Wichman being permitted to develop by means of illustrative exhibits his theory that both of the signatures on the back of the check were in the handwriting of the defendant, and that she had tried to distort her handwriting when she gave the exemplars to DeLoch.

■ A few days before the first trial the defendant and some of her relatives called on Mamie Brown at her home on two or three occasions and discussed the case with her. At both trials the government was permitted over the defendant's objections to introduce evidence with respect to those visits. That evidence was to the effect that the defendant and her relatives corruptly undertook to induce Mamie Brown to change her story and to state that she had authorized the defendant to cash the check, and that in the course of one of the visits defendant's brother offered to pay over to Brown the amount of the check. The defendant came forward with evidence to the effect that the purpose of the visits was innocent, and that she and her relatives were simply trying to get Brown to "tell the truth" about the affair of the check.

For reversal the defendant contends that the district court committed prejudicial error when it admitted the evidence about the visits made by defendant and her relatives to Mamie Brown and when it admitted the testimony of DeLoch and Wichman and the exhibits to their testimony. Defendant argues that the challenged evidence had a prejudicial effect that far outweighed its relevancy, if any, and that exclusion was required under Fed.R.Evidence 403. As indicated, we disagree.

The evidence as to the visits was admissible, and it was for the jury to say what weight should be given to it. *Cf. Wilson v. United States,* 162 U.S. 613, 621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); *United States v.*

*Werner,* 160 F.2d 438, 441 (2d Cir. 1947); and *United States v. Freundlich,* 95 F.2d 376, 378–79 (2d Cir. 1938).

■ We recognize, of course, that the probative value of an item or body of evidence may be so outweighed by its prejudicial effect that Rule 403 calls for exclusion. However, the task of balancing the probative value of the evidence against its purely prejudicial effect is primarily one for the trial court. And if the trial judge in the exercise of his discretion determines that the evidence should be admitted, we normally defer to his judgment. *United States v. Matlock,* 558 F.2d 1328, 1332 (8th Cir. 1977), and cases cited. Here, we see no abuse of discretion in the action of the district court in admitting the evidence as to the visits and as to what took place in the course of them.

■ ■ The defendant contends that in view of her admissions and stipulations that she had signed both names on the back of the Brown check the government's offer of the exemplars and the testimony of DeLoch and Wichman plus additional exhibits to the latter's testimony could have had no purpose other than to prejudice the jury against the defendant, and that defendant's objections to the evidence should have been sustained.

In view of the other evidence in the case and the admissions of the defendant we doubt that the evidence about the defendant's handwriting carried very much weight with the second jury. However, we think that at worst it was cumulative and not substantially prejudicial. Moreover, we think that the government had a right to show that the defendant at one stage of the investigation undertook, at least for a short time, to throw the investigators off the scent by distorting her handwriting when she gave the exemplars to DeLoch. Here again, the question of the admissibility of the challenged evidence addressed itself to the discretion of the trial judge, and again we see no abuse of discretion in his determination that the evidence should be admitted.

Affirmed.