UNITED STATES of America, Appellee,

v.

Gerald George WEIR, Appellant.

UNITED STATES of America, Appellee,

v.

Daniel Wesley DAVIS, Appellant.

Nos. 77–1708, 77–1709.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1978.

Decided May 17, 1978.

Thomas D. Hanson and Philip F. Miller, Des Moines, Iowa, for appellants.

John M. Fitzgibbons, Asst. U. S. Atty., Des Moines, Iowa, for appellee; Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa, on brief.

Before LAY, HEANEY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

These are appeals from judgments entered in the United States District Court for the Southern District of Iowa [1] sentencing appellants to twenty years imprisonment following a jury verdict finding appellants guilty of armed bank robbery in violation of 18 U.S.C. §§ 2113(d) and 2.

Appellants assert five grounds for reversal. First, appellants argue the district court erred in admitting "other crimes" evidence in violation of Fed.R.Evid. 403 and 404(b). Second, appellants argue the district court erred in admitting certain other items of evidence. Third, appellant Davis argues the district court erred in refusing to admit evidence concerning another suspect in the bank robbery and in refusing to order the disclosure of the name of an informer who implicated a person other than Davis as the second participant in the bank robbery. Fourth, appellant Davis argues the district court erred in joining appellants' cases for trial and in denying Davis' motion to sever. Last, appellants argue the district court erred in allowing the Assistant United States Attorney to state in his closing argument that appellants were dangerous, ruthless people and that a verdict of acquittal would turn the streets over to them.

We reverse and remand for a new trial.

The essential facts and procedural history may be summarized as follows. On February 28, 1977 two masked men robbed the East Euclid Branch of the Valley National Bank of Des Moines, Iowa. Appellants Gerald George Weir and Daniel Wesley Davis, along with Andrew Harold Jackson, were arrested and charged with the robbery. After a preliminary hearing appellants and Jackson were bound over to a grand jury which indicted Davis and Weir separately for bank robbery in violation of 18 U.S.C. §§ 2113(d) and 2 and Jackson for misprision of a felony in violation of 18 U.S.C. § 4. Jackson pleaded guilty to misprision of a felony shortly before the trial of Weir and Davis began and became a government witness against Weir and Davis.

At trial the government introduced evidence of an attempt by appellants to kill a suspected informant, one Gilman, which allegedly occurred approximately two weeks after the robbery, and of threats by Weir to kill Jackson and an FBI agent. This evidence was introduced through the testimony of Jackson. Jackson's testimony, as it relates to these two incidents, may be summarized as follows. On March 10, 1977 Weir and his wife met Jackson and they went to Greenwood Park in Des Moines. After walking into a wooded area of the park Weir produced a pistol and threatened to kill Jackson because he believed Jackson had been talking with the FBI about the bank robbery. Weir also talked about killing FBI Agent Hersley who had signed the affidavit appended to the federal search warrant which had been executed at Weir's residence on March 5, 1977. In an attempt to convince Weir that Jackson had not been the informer, Jackson responded that Gilman, a friend of Jackson's, also knew about the bank robbery.

On March 12, 1977 Weir indicated to Jackson that he wanted to talk to Gilman because he suspected that Gilman had been talking with the FBI. On March 14, 1977

[1]. The Honorable William C. Stuart, Chief Judge, United States District Court, Southern District of Iowa.

Jackson was instructed to drive Weir and Davis south of Des Moines to an abandoned farmyard near Milo, Iowa. During the drive Weir stated that he and Davis were going to kill Gilman. Jackson was told to leave Weir and Davis at the farm and to pick up Gilman in Des Moines and return to the farm with him where Weir and Davis would be waiting to kill Gilman. Jackson did as he was told, but as Gilman got out of the car at the farmyard Jackson shot him in the arm with the hope that he would be able to get away. Gilman managed to escape and shortly thereafter Jackson, Weir and Davis left the farmyard and returned to Des Moines.

Jackson's testimony concerning the Greenwood Park and Milo farm episodes was admitted over the objection of counsel for appellants that it was irrelevant and highly prejudicial.

In their briefs appellants assert that Jackson's testimony, especially as it dealt with threats of assassination of Gilman and Jackson, was evidence of "other crimes" committed by appellants and that the evidence should have been excluded under Fed.R.Evid. 404(b) which states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The district court ruled that the evidence was relevant to state of mind or knowledge of guilt. After the verdict, in overruling a motion for a new trial, the trial judge stated that the testimony was relevant to establish motive, identity and intent. Appellants argue that Jackson's testimony was not relevant to any of the aforementioned exceptions to the rule of exclusion set out in Fed.R.Evid. 404(b), and that even if relevant under Rule 404(b) the testimony was not clear and convincing. Further, appellants argue that even if Jackson's testimony was relevant to one of the exceptions set out in Rule 404(b), it should have been excluded nonetheless pursuant to Fed.R. Evid. 403.

It may be that the "other crimes" evidence was marginally relevant to the issue of identity. However, we do not decide that issue since we hold that the probative value of the evidence, if any, was substantially outweighed by the danger of unfair prejudice and that it should have been excluded under Fed.R.Evid. 403, which states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

It is not without hesitation that we reverse a district court's ruling on a matter such as this. In determining whether evidence should be excluded under Fed. R.Evid. 403 we realize that great deference must be given to the district judge who saw and heard the evidence. *United States v. Hall*, 565 F.2d 1052 (8th Cir. 1977); *United States v. Matlock*, 558 F.2d 1328, 1332 (8th Cir. 1977); *United States v. Maestas*, 554 F.2d 834, 836 (8th Cir. 1977). However, a careful review of the transcript reveals that the rule of deference is not decisive in the present case. The district judge at one point in the trial had determined that the "other crimes" evidence should be excluded because the danger of prejudice outweighed its probative value, rejecting arguments by the Assistant United States Attorney. The Assistant United States Attorney persisted in his argument, stating that guns were seen by Jackson at Davis' house and that Jackson stayed in Davis' house for a few days when he (Jackson) was hiding out after the Milo incident. The fact that Jackson stayed with Davis was characterized by the Assistant United States Attorney as imperative to the government's case because that was how Jackson ultimately was able to identify Davis. The district judge agreed that the government should be permitted to show the connection between Davis and Jackson, and after more discussion

he, with obvious misgivings, changed his ruling on the admissibility of the "other crimes" evidence stating:

Well, I think we have wasted enough time. I'm going to open it up and let the government put in what they want, and the government can take their chance on reversal on this decision.

The government chose to take that chance, and we reverse. The trial judge was correct in his determination that the prejudicial impact of the "other crimes" evidence outweighed its probative value and also in his determination that the government was entitled to show that Jackson stayed in Davis' home for a few days. However, the fact that Jackson stayed in Davis' home for a few days and saw guns there which were later recovered from the river could have been offered into evidence, by appropriate questions, without going into the objectionable "other crimes" evidence.

In agreeing with the district court's original assessment that the prejudicial impact of the "other crimes" evidence substantially outweighed its probative value, we note the obvious tendency of the testimony of Jackson to suggest to the jury that a decision be rendered on an improper basis. The testimony suggested that appellants be convicted of bank robbery because they were bad men who had threatened to kill or attempted to kill law enforcement agents or informers.[2] Indeed, the Assistant United States Attorney's statements in closing argument that appellants were dangerous, ruthless people and that a verdict of acquittal would turn the streets over to them appear to be calculated to enhance the ef-

fect of the "other crimes" evidence on the jury in suggesting an improper basis for a verdict of guilty, and these statements contribute to the balance of unfair prejudice resulting from the admission of the "other crimes" evidence.[3]

■ Next, we must determine whether the error in allowing Jackson to testify concerning the "other crimes" requires reversal. The test which we must apply is whether the error was harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). If, upon the record as a whole, this court is certain that the admission of the evidence did not influence the jury, or had but a slight effect, the verdict should stand. *Wright v. United States*, 389 F.2d 996, 1000 (8th Cir. 1968); *Atkinson v. United States*, 344 F.2d 97, 101 (8th Cir. 1965). The government argues that the evidence against Weir and Davis was so overwhelming that it can be said with confidence and beyond a reasonable doubt that the outcome of the case was not altered by admission of the evidence. We disagree.

The testimony of Jackson was a critical part of the government's case, and Jackson's credibility was of extreme importance to the government. The Assistant United States Attorney argued to the district court that he needed the "other crimes" evidence to bolster Jackson's credibility.[4] He stated also that the "other crimes" evidence was necessary to show that the motive of Jack-

---

2. Our perusal of the transcript revealed a third instance of "other crimes" testimony which should likewise be excluded upon retrial of appellants for the same reasons. See Tr. p. 728, where Jackson testified:

Q And did you say anything to George at this time?
A Yes, we talked about the shooting, and he was talking about taking care of this Cole.
Q What did you say to him?
A I just told him he was getting a little kill-crazy.

3. This argument, standing alone, states no cause for reversal. Apart from the "other crimes" evidence, and in context, we do not consider it to be extreme, particularly in light

of cautionary instructions which were given by the district court.

4. In chambers the Assistant United States Attorney stated:

Here is the problem I have. Obviously the trial is going to boil down to—is going to be the credibility and motive of, probably, Jackson to balance against Weir and Davis when they testify. It's going to be one-on-one. That's what it's going to be. Now it's imperative for me to adequately present a case for the government as I would be able to present a case showing to the jury that Mr. Jackson is an honest and credible man, which in my opinion, he very much is. If I am required to gloss over certain areas. . . .

son in going to the police was that the shooting and threats were getting too much for him since he had planned only on being the hideout man. Thus, in addition to being extremely inflammatory, the testimony of Jackson tended to bolster his own credibility as the government's primary witness. In these circumstances we cannot say that the admission of Jackson's testimony concerning "other crimes" committed by appellants was harmless beyond a reasonable doubt. The total effect was a presentation to the jury that the defendants were "bad" men and should be convicted because they were "bad."

Weir was allegedly involved in both the Greenwood Park and the Milo incidents and because of the erroneous admission of testimony concerning these two incidents, his conviction must be reversed. Davis was allegedly involved in the Milo incident involving the attempted murder of the informant Gilman. Thus, the conviction of Davis also must be reversed.

■ Since on retrial the question of severance again may arise, we note here our rejection of claimed error in the district court's joinder of appellants' cases for trial and in denying a motion to sever. Consolidation is governed by Fed.R.Crim.P. 13 which states:

The court may order two or more indictments or informations or both to be tried together if the offenses, and the defendants if there is more than one, could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information.

Fed.R.Crim.P. 8 states:

*Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts togeth-

er or separately and all of the defendants need not be charged in each count.

It is clear that the indictments in the present case charging appellants with the same act and offense of the armed robbery of the Valley National Bank on February 28, 1977 constituted a sufficient allegation that the two participated in the "same act or transaction" as required by Fed.R. Crim.P. 8. Thus, joinder was proper.

■ Under Fed.R.Crim.P. 14 if it appears that a defendant is prejudiced by a joinder of defendants for trial together, the court may grant a severance of defendants. Granting of severance is within the discretion of the trial judge and his ruling will rarely be disturbed on appeal. *See United States v. Schmaltz*, 562 F.2d 558, 560 (8th Cir. 1977); *Williams v. United States*, 416 F.2d 1064, 1070 (8th Cir. 1969). In the present case we find no abuse of discretion by the trial judge in his denial of Davis' motion to sever.[5]

In March, 1977 Special Agent Hersley of the Federal Bureau of Investigation executed an affidavit for a warrant to search the residence of defendant Weir. The affidavit was based upon information furnished by an unnamed informant and that information implicated in the robbery a person named Grandstaff.

At trial counsel for defendant Davis sought the name of the informant for the alleged purpose of showing that perhaps Grandstaff, and not Davis, took part in the robbery. The government claimed privilege and asked the court not to require disclosure of its files or the name of the informer.

■ Prior to ruling finally on the claim of privilege the district judge had the government furnish to himself, *in camera*, information concerning the necessity for confidentiality and the contents of the government file concerning information the informant had about the case. After reviewing this material the judge telephoned the informant and satisfied himself that any information the informant had would not have been relevant or helpful to the

---

**5.** A portion of the "other crimes" evidence related to only one of the appellants and its admission even with limiting instructions lends

strength to appellant Davis' severance argument. However, on retrial that problem should not recur, at least in the same degree.

defense of either of the defendants, that he had no evidence that would have been admissible at trial and that disclosure of his name was not essential for a fair determination of the case. This court has previously recognized that a court should not require disclosure of an informant's identity unless the disclosure is vital to a fair trial. *United States v. Hurse*, 453 F.2d 128, 130 (8th Cir. 1972); *United States v. Turchick*, 451 F.2d 333, 336 (8th Cir. 1971). We agree with the trial judge's determination that disclosure in the present case was not vital to a fair trial and that the government's interest in preserving the flow of information outweighed any need by the appellants for the information. Also, we approve the method by which the trial court dealt with this problematic situation which was in accord with the procedure approved in *United States v. Hurse, supra.*

Moreover, we have carefully examined the *in camera* material submitted to us under seal and have concluded that the informer had no first hand information with regard to the bank robbery. Indeed, much of the information he furnished regarding the alleged third participant was not only rank hearsay but was wrong and not likely to lead to correct information or evidence.

While we dislike the necessity of either the district court or this court having to proceed *in camera*, and in a sense ex parte, on any evidentiary aspect of a criminal case, we are confident that the district judge correctly refused to require disclosure.

Finally, we note that the admission of certain items of evidence complained of by appellants is troublesome, in particular a list of license plate numbers and weapons and ammunition only slightly related to the bank robbery, if related at all. However, on retrial it is likely that these problems either will not recur or will arise in a different context and thus we do not deem it necessary to rule upon them.

As indicated, the judgments of conviction are reversed and the cases remanded for new trial.