UNITED STATES of America, Appellee,

v.

Daniel Wesley DAVIS, Appellant.

UNITED STATES of America, Appellee,

v.

Gerald George WEIR, Appellant.

Nos. 78–1619, 78–1620.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1979.

Decided May 4, 1979.

Thomas D. Hanson, Des Moines, Iowa, for appellant Weir.

Philip F. Miller, Des Moines, Iowa, for appellant Davis.

John M. Fitzgibbons, Special Asst. U. S. Atty., Des Moines, Iowa, for appellee; Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa, on brief.

Before GIBSON, ROSS and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Gerald George Weir and Daniel Wesley Davis appeal from judgments entered in the district court [1] upon jury verdicts finding them guilty of bank robbery in violation of 18 U.S.C. §§ 2113(d) and 2. The district court sentenced each appellant to a term of twenty years imprisonment.

For reversal appellants argue that their convictions must be reversed because the testimony of the government's principal witness, Andrew Harold Jackson, about appellants' preparation and participation in the robbery was incredible and insubstantial. Appellant Davis argues separately that the district court erred in denying his motion to sever.

For the reasons discussed below, we affirm the judgments of the district court.

This is the second appeal of this case. Appellants' first convictions were reversed and remanded for a new trial because the district court erred in admitting certain evidence of "other crimes." *United States v. Weir*, 575 F.2d 668, 671–72 (8th Cir. 1978) (Henley, J.). Briefly, the facts are as fol-

---

1. The Honorable William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

lows. Two men wearing ski masks and armed with a carbine and a revolver robbed the East Euclid branch of the Valley National Bank of Des Moines, Iowa, on February 28, 1977. Appellants and Andrew Harold Jackson were arrested and charged with the robbery. Appellants were indicted separately for the robbery; Jackson was indicted for misprision of a felony in violation of 18 U.S.C. § 4. Shortly before appellants' first trial, Jackson pleaded guilty[2] and became the government's principal witness. Appellants were convicted at the second trial and this appeal followed.

Appellants jointly argue that Jackson's testimony was incredible and insubstantial. They submit that Jackson's version of the preparation and actual robbery was simply unbelievable, that Jackson was thoroughly impeached, and that Jackson and an unknown accomplice actually robbed the bank. The government argues, as appellants admit, that the uncorroborated testimony of an accomplice is sufficient for a conviction if such testimony is not otherwise incredible or insubstantial on its face. *E. g., Caminetti v. United States,* 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *United States v. Cady,* 495 F.2d 742, 744 (8th Cir. 1974). The government further argues that Jackson's testimony was in fact corroborated by independent evidence.

■ Jackson testified in some detail about the preparation before the robbery and the events afterward. For example, Jackson testified that appellant Weir approached him and asked him to modify a carbine. Appellant Weir next asked Jackson to provide a hideout; Jackson suggested his father's house. Jackson further testified that he purchased gloves and a ski cap worn by appellant Davis during the robbery. Jackson also testified about the disposal of the robbers' clothing and weapons and the events leading to their arrest. Appellants' counsel cross-examined Jackson and emphasized the inconsistencies in his testimony as well as the fact that Jackson had cooperated with the FBI investigators and had been paid for his information. The jury obviously found Jackson's testimony to be believable and discredited appellant Weir's alibi evidence[3] and the theory that Jackson and an accomplice actually robbed the bank.

Furthermore, there was corroborating evidence of appellants' participation. For example, part of the "bait money" from the bank robbery was discovered during a search of appellant Weir's house. The clothing that Jackson described as worn by appellants the day of the robbery was recovered and matched the descriptions given by bank employees and the type of clothing shown in the bank surveillance photographs. The analysis of hair samples taken from the clothing exhibited similar microscopic characteristics to appellants' hair samples.

■ Appellant Davis argues separately that the district court erred in denying his motion to sever. He argues that the repeated introduction of evidence of wrongdoing by appellant Weir was prejudicial *per se,* the government's closing arguments improperly combined the evidence,[4] the dis-

---

**2.** Jackson was sentenced to three years imprisonment; sentence was suspended on condition that Jackson serve sixty days in a jail-type facility and three years probation.

**3.** Appellant Weir, his wife, his brother and the babysitter all testified that he had been taking inventory at his store at the time of the robbery. Appellant Davis did not testify.

**4.** Mr. Fitzgibbons: . . . George Weir apparently is doing more things, but Danny Davis is equally guilty, equally guilty under this bank robbery charge. I submit that, frankly, it's going to be quite difficult to separate this trial. Weir and Davis—

Mr. Hanson (counsel for appellant Weir): Objection.
Mr. Miller (counsel for appellant Davis): I'm going to object to it, too, Your Honor.
The Court: That will be sustained. The law is that it is the jurors' duty to separate the trial, and to consider the evidence against each one separately.
Mr. Fitzgibbons: Now, you will have two verdict forms. I was going to say one of the verdict forms is for Mr. Davis, one is for Mr. Weir. Now, I sub.nit it's going to be difficult to believe Andrew Jackson's story on one and not for the other.

trict court improperly restricted the opportunity of his attorney to present evidence,[5] and certain hearsay testimony[6] was clearly prejudicial. We note that the severance issue was raised in the first appeal and rejected. *United States v. Weir, supra,* 575 F.2d at 672. After a careful review of the record and appellant Davis' allegations of prejudice, we can find no abuse of discretion in the district court's refusal to grant a severance. *See, e. g., United States v. Wright,* 564 F.2d 785, 787 (8th Cir. 1977); *United States v. Schmaltz,* 562 F.2d 558, 560 (8th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 315 (1977). The district court was very sensitive to the introduction of evidence of wrongdoing by appellant Weir and its possible effect upon appellant Davis and repeatedly admonished the jury to evaluate the evidence separately as it applied to each defendant. Under the facts of the present case, we do not believe the jury could not have been reasonably expected to compartmentalize the evidence. *See, e. g., United States v. Losing,* 560 F.2d 906, 912 (8th Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977); *United States v. Jackson,* 549 F.2d 517, 525 (8th Cir.), *cert. denied,* 431 U.S. 923, 97 S.Ct. 2195, 53 L.Ed.2d 236 (1977).

The government's closing arguments, *see* note 4 *supra,* do not warrant reversal of appellant Davis' conviction. We would caution counsel against making these kinds of ambiguous remarks; however, in the present case the government's closing arguments referred to the *difficulty* in separating the evidence, which could be taken as an admonition to the jury to separate the evidence. In any event, the district court immediately instructed the jury about its responsibility to evaluate the evidence separately as to each defendant.

Nor do we find that the hearsay testimony, *see* note 6 *supra,* was so prejudicial as to require reversal. The district court

promptly advised the jury of its inadmissible character and directed the jury to disregard it. Further, much of Jackson's testimony had already referred to appellant Davis' participation in the robbery.

Finally, we note that the question of the exclusion of evidence of another suspect was thoroughly addressed in the first appeal. *United States v. Weir, supra,* 575 F.2d at 672–73. Here, as in the first trial, appellant Davis' counsel sought to introduce evidence which implicated another person as appellant Weir's accomplice. In the first trial the government claimed privilege and opposed disclosure of its information or the identity of the informant. The district court in the first trial examined the government's files *in camera* and personally telephoned the informant before concluding that "any information the informant had would not have been relevant or helpful to the defense of either of the defendants, that he had no evidence that would have been admissible at trial and that disclosure of his name was not essential for a fair determination of the case." *Id.* at 673. The *in camera* material was reviewed on appeal and "much of the information [the informant] furnished regarding the alleged third participant was not only [found to be] rank hearsay but . . . wrong and not likely to lead to correct information or evidence." *Id.* In short, counsel for appellant Davis tried to introduce evidence which had been previously, and correctly, determined by the district court to have been hearsay, incorrect and in no way helpful or relevant to appellant Davis' defense.

Accordingly, the judgments of the district court are affirmed.

---

5. The evidence concerned a person named Grandstaff. It evidently was the theory of appellant Davis that this person, who, with appellant Weir, had been convicted for bank robbery several years before, was a suspect in this bank robbery.

6. Mr. Fitzgibbons: What did you do?
   Mr. Jackson: He [Weir] knew that Danny threw the weapons in the river, but he didn't know where, and—