**UNITED STATES of America, Appellee,**

v.

**Don Phillip DeANGELO, Appellant.**

**No. 93–1296.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1993.

Decided Jan. 12, 1994.

Virginia Villa, Minneapolis, MN, argued, for appellant.

Kenneth Saffold, Minneapolis, MN, argued, for appellee.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. The defendant described the "starter gun" in his trial testimony as having a barrel plugged with metal with a tiny slot for smoke to escape

Before RICHARD SHEPPARD ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

Don Phillip DeAngelo appeals his conviction for armed bank robbery. DeAngelo argues that the district court[1] committed reversible error by improperly admitting unduly inflammatory evidence against him and by improperly instructing the jury on an element of the armed bank robbery count. We affirm the district court's judgment.

## I.

On June 3, 1992, DeAngelo robbed the Capitol State Bank in St. Paul, Minnesota. DeAngelo told a teller at the bank that he had a gun, but he never displayed a gun nor anything resembling a gun. On June 5, 1992, DeAngelo robbed the Norwest Bank in New Brighton, Minnesota. During the robbery of the Norwest Bank, he brandished and discharged what appeared to some of the witnesses in the bank to be a pistol.

On June 7, 1992, DeAngelo was arrested by the State Patrol in Nebraska with some $5,000 in cash (including bait bills from the Norwest robbery) and a starter gun[2] in his possession. DeAngelo subsequently was indicted for two counts of armed bank robbery under 18 U.S.C. §§ 2113(a) & 2113(d). Count one charged the June 3, 1992, robbery and count two charged the June 5, 1992, robbery.

At trial on these charges, DeAngelo admitted robbing the banks (a violation of 18 U.S.C. § 2113(a)) but argued that he did not commit armed bank robbery (under 18 U.S.C. § 2113(d)). In particular, DeAngelo argued that he did not use a "dangerous weapon," a necessary element under 18 U.S.C. § 2113(d) for an armed bank robbery conviction, in either robbery. DeAngelo asserted that he did not use any weapon in the

and as being designed not to fire anything but caps which fit into the nose of the "gun." Defendant refers to this as a toy gun. We understand this "starter gun" to be the type of nonprojectile firing gun used to start races.

first robbery and that the starter gun he used in the second robbery was not a "dangerous weapon." DeAngelo asked the jury to return a guilty verdict on both counts for simple bank robbery violations under 18 U.S.C. § 2113(a). The jury returned a verdict finding DeAngelo guilty of simple bank robbery on count one but finding DeAngelo guilty of armed bank robbery on count two. DeAngelo appeals his conviction for armed bank robbery on count two.

## II.

DeAngelo first argues that the district court committed reversible error in admitting a tape recording of a telephone call DeAngelo made to Nancy Hults, his former girlfriend, after the second robbery and shortly before his arrest. In that telephone conversation, DeAngelo accused Ms. Hults of "ratting" on him. He repeatedly used excessive vulgarity and ultimately made death threats against Ms. Hults. DeAngelo argues that the district court violated Federal Rule of Evidence 404(b) and our decision in *United States v. Weir*, 575 F.2d 668 (8th Cir. 1978), by admitting the tape into evidence and allowing it to be played to the jury.

In *Weir*, a bank robbery case, we found that the trial court committed reversible error under Rule 403 in admitting testimony about the defendant's death threats against a witness and his plot to kill a witness. 575 F.2d 670–71. We specifically declined to reach the 404(b) question, finding instead that the evidence was inadmissible under Rule 403. We found that the danger of unfair prejudice outweighed the probative value of the threat evidence under Rule 403 and specifically stated that "[t]he testimony [of threats] suggested that appellants be convicted of bank robbery because they were bad men who had threatened to kill or attempted to kill law enforcement agents or informers." *Id.* at 671. DeAngelo urges us to follow *Weir* and find that the trial court improperly admitted the tape-recorded evidence against him.

The government argues that the tape was admissible under Rule 404(b) on four different grounds. First, the government contends that the evidence showed the context of the bank robbery crime because DeAngelo specifically mentions the cash he received from the robberies and the car he bought with the cash. Second, the government argues that the death threats against Ms. Hults are evidence of DeAngelo's consciousness that he is guilty of bank robbery. Third, the government asserts that the tape also helps demonstrate his motive for the robbery because it shows that DeAngelo intended to give some of the money he obtained in the robbery and a car he had bought with the money to Ms. Hults. Fourth, the government argues that the threats demonstrate DeAngelo's capability of using the type of force and intimidation he was charged with in the armed robbery count. The government also argues that *Weir* can be distinguished because it is based on entirely different facts from those involved in this case.

▮ Rule 404(b) provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Rule 404(b) applies to evidence of subsequent as well as prior crimes, wrongs, or acts. *See United States v. Johnson*, 934 F.2d 936, 939–40 (8th Cir.1991). In order for the trial court to admit evidence under Rule 404(b), the evidence must satisfy the following conditions:

1. The evidence of the bad act or other crime is relevant to a material issue raised at trial;

2. The bad act or crime is similar in kind and reasonably close in time to the crime charged;

3. There is sufficient evidence to support a finding by the jury that the defendant committed the other act or crime; and

4. The potential prejudice of the evidence does not substantially outweigh its probative value.

*Id.* at 939. "The district court has broad discretion to admit such evidence and its discretion will not be overturned unless it is clear that the evidence had no bearing upon any of the issues involved." *Id.* (quotations omitted).

Three of the reasons the government asserts for offering the evidence at trial support the trial judge's decision to admit the recorded conversation without ever implicating Rule 404(b). We have held that the jury in a criminal case is entitled to know about the context of a crime and any events that help explain the context. *United States v. Rankin,* 902 F.2d 1344, 1346 (8th Cir.1990). We have ruled a number of times post-*Weir* that evidence of death threats against witnesses or other parties cooperating with the government is generally admissible against a criminal defendant to show consciousness of guilt of the crime charged. *See 'United States v. Nunn,* 940 F.2d 1128, 1131 (8th Cir.1991); *see also United States v. Runge,* 593 F.2d 66, 70 (8th Cir.1979). Moreover, we have noted that as direct evidence of the crime charged, the evidence of threats is not even Rule 404(b) evidence. *Nunn,* 940 F.2d at 1131 (citing *United States v. McConnell,* 903 F.2d 566, 571 (8th Cir.1990)).

■ To the extent that DeAngelo talks about the cash he obtained in the robberies and the car he bought with it, those parts of the taped conversation are, in our view, non-hearsay admissions by the defendant concerning the crimes he is charged with committing. *See* Fed.R.Evid. 801(d)(2)(A). They are not evidence of some "other crime," nor are they themselves "bad acts", and they do not need Rule 404(b) to authorize their introduction. If they did, those admissions would also tend to show DeAngelo's motive for the robberies, which is, of course, one of Rule 404(b)'s listed reasons for admission.

The fourth reason advanced by the government is somewhat problematic because it comes close to being the very reason for the exclusionary portion of Rule 404(b), i.e., if DeAngelo would threaten death to Ms. Hults over the telephone, then he possesses the character trait for using the force and intimidation he was charged with using in the bank robbery counts and it is likely then that he

did so. Two important factors dispel our concern in this respect. First, while the government advances the suspect argument here, it did not do so with the jury. As we point out in more detail later in this opinion, no mention of the conversation or the inferences to be drawn from it were made by the prosecutor in closing argument. Secondly, the trial court gave the jury a limiting instruction guarding against the use of the recording as character evidence.

■ DeAngelo concedes that evidence of death threats is admissible to show consciousness of guilt and that the taped conversation would be admissible to show motive. DeAngelo contends, however, that while the tape-recorded evidence may be probative of his guilt on the simple bank robbery charges under § 2113(a), the threats and other inflammatory material in the tape are not probative of his guilt for the armed bank robbery charges under § 2113(d). DeAngelo argues that when he admitted his guilt on the simple bank robbery charges in his opening statement and throughout the trial, the tape-recorded evidence was no longer probative of his guilt on the simple robbery charge because he had conceded the issue and it was no longer a subject of dispute in the trial. DeAngelo asserts that admitting the threat evidence violated Rule 404(b) because it was not relevant to the armed robbery charges but instead it suggested that the jury find him guilty under § 2113(d) based on a subsequent bad act, not on evidence of armed bank robbery.

■ DeAngelo incorrectly asserts that because he conceded the § 2113(a) violations in his opening statement, the government's evidence on those violations was no longer relevant to the case. The § 2113(a) charges remained in the case throughout the trial, the court instructed the jury on those charges, and the jury deliberated and returned a verdict on those charges. Moreover, "[i]t is well established in this circuit that as a general rule, the government is not bound by a defendant's offer to stipulate." *United States v. Hiland,* 909 F.2d 1114, 1134 (8th Cir.1990). This rule applies to the analogous situation in this case where DeAngelo, the defendant,

conceded the issue in opening statement. Hence, the § 2113(a) charges remained in issue when the government offered the taped conversation into evidence.

■ Our view of this case convinces us that we need not address the merits of DeAngelo's Rule 403 argument under *Weir*. Even if we were to agree with him that the trial judge abused his discretion in admitting the recording over DeAngelo's more prejudicial than probative objection, we conclude that given the record DeAngelo himself made about his previous convictions and 22 years of incarceration for, among other things, a spree of other robberies and murder, any error in admitting the tape-recorded conversation, filled as it was with vulgarity and profanity, was harmless error. Evidentiary rule violations "which do not affect constitutional rights are subject to Fed.R.Crim.P. 52(a) harmless error analysis" rather than "the stricter harmless error test found in *Chapman v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967), which requires that the error be harmless beyond a reasonable doubt." *United States v. Copley*, 938 F.2d 107, 110 (8th Cir.1991).[3] Under Rule 52(a), "[a]n error is harmless if the reviewing court, after viewing the entire record, determines that no substantial rights of the defendant were affected, and that the error did not influence or had only a slight influence on the verdict." *United States v. Flenoid*, 949 F.2d 970, 973 (8th Cir.1991) (quoting *United States v. Cortez*, 935 F.2d 135, 140 (8th Cir. 1991)). Stated another way, "[o]nly if the jury may have been 'substantially swayed' by improperly-admitted evidence must we reverse the conviction." *United States v. Davis*, 936 F.2d 352, 355 (8th Cir.1991).

We find that the admission of the tape recording had, at most, a slight influence on the verdict, but it certainly did not substantially sway the jury in reaching the guilty verdict. The record contains overwhelming evidence of DeAngelo's guilt of armed bank robbery. A number of eyewitnesses to the second robbery, for which he was convicted of armed robbery, stated that they believed he had a real gun when he committed the robbery. Pictures from the bank showed him holding the gun, and he described how he used and fired it during the second robbery when he testified on direct examination. (Tr. at 182.) Moreover, DeAngelo himself described both on direct and cross examination other crimes and bad acts that he had committed including, as mentioned above, murder, aggravated robbery, and drunk driving. We find that any prejudicial effect generated by the tenor of the tape recording had a minimal impact on the jury's verdict in this case given the overwhelming evidence of DeAngelo's guilt and the prejudicial evidence DeAngelo himself introduced. In his own direct testimony he told the jury "I am not a very nice guy, you know. I mean so you have a right not to like me ...." (Tr. at 187.) He voluntarily used four-letter expletives, including the f-word, in his direct testimony. (Tr. at 190.) Any error of the trial judge in admitting the evidence was harmless and, accordingly, is not a basis for reversing DeAngelo's conviction.

This case differs substantially from *Weir* for the purposes of the harmless error analysis. In *Weir*, the prosecutor relied heavily on the evidence of the threats and focused on them in closing argument. Here, the prosecutor introduced the evidence but never mentioned it again in any other part of the trial including closing argument. In *Weir*, we concluded that the central part the evidence played in obtaining the conviction presented an unacceptable risk that the jury convicted the defendants simply because they were "bad men." 575 F.2d at 672. That risk is virtually nonexistent in this case. The tape-recorded conversation was not a focal point of the prosecution, there was other overwhelming evidence of guilt, and the trial court provided a limiting instruction. Hence, unlike *Weir*, the error in admitting the evidence in this case is harmless and does not warrant reversal of DeAngelo's conviction.

---

**3.** We acknowledge that the court in *Weir* applied the more restrictive test for harmless error outlined in *Chapman* rather than the Rule 52(a) test. However, we believe that *Copley*, a case decided subsequent to *Weir*, makes clear that the Rule 52(a) test applies and *Chapman* is applicable only to cases of constitutional violations. Because DeAngelo has not alleged and we have not found a constitutional violation in the present case, we apply the Rule 52(a) test.

### III.

DeAngelo also argues that the trial court gave an erroneous jury instruction on the armed robbery charge. The government is required to prove that DeAngelo used a "dangerous weapon" to obtain a conviction for armed bank robbery under 18 U.S.C. § 2113(d). The use of a "dangerous weapon" distinguishes armed bank robbery under § 2113(d) from simple bank robbery under § 2113(a). The trial court provided the following instruction to the jury on what constitutes a dangerous weapon:

The term "dangerous weapon or device" means any object that can be used by one person to inflict severe bodily harm or injury upon another person.

"Puts in jeopardy the life of any person by the use of a dangerous weapon or device" means, therefore, to expose a person to a risk of death or severe bodily harm by the use of a weapon or device that is capable of inflicting death or severe bodily harm.

If you find beyond a reasonable doubt that the defendant displayed what looked like a dangerous weapon during the robbery you may find the defendant assaulted another person. When the weapon is proved to be inoperable it can still be dangerous. The law requires only that the defendant use a dangerous weapon, not that the weapon be loaded or actually capable of firing. A weapon may be dangerous if it instills fear in the average citizen by creating an immediate danger that a violent response will follow.

(R. at 32.) DeAngelo objected to the third paragraph of the instruction at trial and argues that it improperly stated the law. DeAngelo objects most strenuously to the first sentence of the third paragraph. DeAngelo asserts that the remainder of the paragraph is erroneous because it is improperly colored by the first sentence.

DeAngelo and the government agree that the Supreme Court provided substantial guidance on the definition of a "dangerous weapon" under § 2113(d) in *McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15 (1986). The Court found that an unloaded gun should be considered a "dangerous weapon" because, among other reasons, its display "instills fear in the average citizen." *Id.* at 18, 106 S.Ct. at 1678. DeAngelo acknowledges that a number of courts relying on *McLaughlin* have found that a toy gun or imitation gun can be considered a "dangerous weapon" as well under § 2113(d). *See, e.g., United States v. Benson*, 918 F.2d 1, 3 (1st Cir.1990) (relying on *United States v. Cannon*, 903 F.2d 849, 853–55 (1st Cir.1990)); *United States v. Medved*, 905 F.2d 935, 939 (6th Cir.1990); *United States v. Martinez–Jimenez*, 864 F.2d 664, 667–68 (9th Cir.1989). We have noted in dicta our agreement with that position. *United States v. Gray*, 895 F.2d 1225, 1226 (8th Cir.1990) ("[A] toy gun can be a 'dangerous weapon' for purposes of 18 U.S.C. § 2113(d).").

DeAngelo contends that the jury instruction in this case improperly stated the law because it did not require the jury to consider whether anyone actually thought that the starter gun was a real gun. He asserts that the instruction allowed the jury to find him guilty if the starter gun only looked like a real gun even if the jury found that no witnesses actually believed it was a real gun. His own testimony, however, was that when he bought the gun before the second robbery it was "the classiest thing they had, looking real." (Tr. at 184.) Moreover, the bank manager, an experienced hunter, saw the gun during the robbery and believed it to be a clip-fed Ruger. (Tr. at 104.) The gun itself was in evidence for the jury to observe and consider.

We disagree with DeAngelo that the instruction misstated the law. The identical instruction has been expressly approved by the First Circuit Court of Appeals. *Cannon*, 903 F.2d at 854 (finding that "[t]here can be no doubt that this instruction was legally correct"). Moreover, we find that the instruction, as written, sufficiently required the witnesses to have a subjective belief that the gun was real. The critical language of the instruction states that the jury could find DeAngelo committed an assault if he displayed "what looked like a dangerous weapon during the robbery." We find that this phrase, read in the context of the entire

instruction, was properly understood by the jury to mean "what looked [to the witnesses] like a dangerous weapon during the robbery."

DeAngelo relies on our decision in *United States v. Thomas,* 521 F.2d 76 (8th Cir.1975), to support his argument that the instruction given here was an inaccurate statement of the law. We there found improper an instruction allowing the jury to convict under § 2113(d) if the bank teller thought his or her life was in danger because the weapon appeared to be dangerous. *Id.* at 81. DeAngelo argues that this conclusion means that the instruction in this case was in error because it allowed the jury to convict under § 2113(d) if the weapon only "appeared" to a witness to be dangerous. We disagree because we find that our holding on this question in *Thomas* clearly has been overruled by the Supreme Court's decision in *McLaughlin.* Hence, we conclude that the jury instruction in this case did not inaccurately state the law.

### IV.

For the foregoing reasons, we affirm the judgment of the district court.