**UNITED STATES of America, Appellee,**

v.

**Cecil Eugene BALLEW, a/k/a Eugene Ballew, Appellant.**

No. 94–2008.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1994.

Decided Nov. 18, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 28, 1994.

---

BOWMAN, Circuit Judge.

Cecil Eugene Ballew was tried before a jury and convicted of one count of mail fraud and one count of wire fraud in violation of 18 U.S.C. §§ 1341, 1343. The fraud charges against Ballew stemmed from a false claim that his red 1987 Chevrolet pick-up truck had been stolen. The District Court[1] sentenced Ballew to 21 months in prison on each count, to be served concurrently, and two years of supervised release. Ballew appeals both his convictions and his sentences. We affirm.

I.

By way of background, we summarize the government's evidence in this case. Responding to a previous call by Ballew, John L. Coleman, a representative of Motors Insurance Company (MIC) in Memphis, Tennessee, telephoned Ballew at his home in Poplar Bluff, Missouri, on November 4, 1987. In a recorded statement, Ballew reported to Coleman that his red 1987 Chevrolet pick-up truck had been stolen in New Orleans, Louisiana, on or about October 9, 1987. Coleman mailed Ballew a claim report form and a loss statement form. MIC received the completed forms from Ballew by mail November 13, 1987. Three days later, MIC paid Ballew and Ford Motor Credit Corporation, the lienholder, $16,750 for the loss.

On May 31, 1989, the Missouri State Highway Patrol recovered the red 1987 Chevrolet pick-up truck at Charles Chatman's farm in, coincidentally, Poplar Bluff, Missouri. Chatman and Ballew had been friends for about ten years. MIC sold the vehicle for salvage, reducing MIC's loss to approximately $10,900.

Evidence introduced at trial showed that Ballew had been in control and possession of the vehicle after he reported it stolen. Ballew had driven the vehicle on numerous occasions after his receipt of MIC's payment on his claim, using it for a few days at a time and then returning it to a locked storage garage, to which Ballew had a key, on the Chatman farm. Ballew used the vehicle in

Ilene A. Goodman, St. Louis, MO, for appellant.

Michael A. Price, Asst. U.S. Atty., St. Louis, MO, for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

two legitimate businesses: a motorcycle and boat shop and an out-of-state farming operation.

When the state highway patrol recovered the vehicle from the Chatman storage garage, its original engine was on the floor of the garage, and a Dodge Cummins diesel engine was suspended from a chain in front of the truck. The truck did not have a vehicle identification number, but it did have a Missouri Department of Revenue assigned identification number [2] that had been issued to Ballew for a blue 1979 Chevrolet pick-up truck. The troopers found a variety of truck parts, some with altered identification numbers, in the vicinity of the truck. They also found a license plate (Mo. 555 623) that had been issued to Ballew for his blue 1979 Chevrolet pick-up truck. The evidence further showed that the same Missouri license plate had been affixed to the red 1987 Chevrolet truck.

Troopers also recovered from the Chatman farm four other trucks that various dealers had reported stolen: (1) a red 1989 dual cab Chevrolet pick-up truck reported stolen from a dealer in Murray, Kentucky, in February 1989 (valued at $20,842); (2) a two-tone blue 1985 Chevrolet pick-up truck from the same dealership reported stolen in March 1989 (valued at $9,500); (3) a blue 1989 Ford pick-up truck reported stolen from a dealer in Sikeston, Missouri, in March 1989 (valued at $19,000); and (4) a silver and gray 1989 Dodge pick-up truck (from which the Dodge Cummins diesel engine was extracted) reported stolen from another dealer in Sikeston, Missouri, in March 1989 (valued at $18,686). Troopers recovered a sixth vehicle, an orange 1983 GMC pick-up truck owned by George Ballew, the defendant's father, that did not have a vehicle identification number. The evidence showed that the defendant interchanged various parts of these trucks and

the red 1987 Chevrolet pick-up truck to hamper identification of the vehicles.

Ballew enlisted Chatman and Clayton Dewayne Hastings, Ballew's partner in the farming operation, to help him steal vehicles one, two, and three from their respective owners. Chatman and Hastings stole vehicle four without Ballew. Ballew arranged to have the engine from the fourth stolen vehicle put into Ballew's red 1987 Chevrolet, and Ballew was present in the storage garage when the engine was removed from vehicle four. Ballew also enlisted Chatman and Hastings to help him conceal the trucks, including the red 1987 Chevrolet that he had reported stolen.

After additional investigation, the Missouri State Highway Patrol seized the blue 1979 Chevrolet truck to which the state of Missouri had assigned the license plate and Director of Revenue number found on the red 1987 Chevrolet. Troopers located it on the Horner farm in Senath, Missouri. The Horners stated that the vehicle ("the Horner farm truck") belonged to Eugene Ballew.

## II.

For reversal of his convictions, Ballew contends that (1) the District Court abused its discretion by admitting evidence that Ballew tampered with the identifying marks of the Horner farm truck; and (2) the court erred by overruling his motions for a judgment of acquittal because the government had failed to produce sufficient evidence for the jury to find him guilty beyond a reasonable doubt. We reject these contentions.

## A.

■ Ballew argues first that the District Court erred when it denied his motion in limine and subsequent objection at trial seeking to exclude evidence of prior bad acts under Federal Rule of Evidence 404(b), [3] spe-

---

2. When a vehicle is constructed from parts of totalled vehicles, Missouri requires a safety inspection by the state highway patrol before it will issue a title for the vehicle. The Missouri Department of Revenue issues each reconstructed vehicle that passes the inspection an "assigned identification number."

3. Federal Rule of Evidence 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

cifically the evidence and testimony regarding the Horner farm truck. We review the evidentiary rulings of a district court only for abuses of discretion, *United States v. Whitfield,* 31 F.3d 747, 749 (8th Cir.1994), and will reverse only when an improper evidentiary ruling affects the substantial rights of the defendant or when we believe that the error has had more than a slight influence on the verdict, *United States v. DeAngelo,* 13 F.3d 1228, 1233 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2717, 129 L.Ed.2d 842 (1994); *see also* Fed.R.Crim.Pro. 52(a).

Ballew's objection under 404(b) mischaracterizes the evidence in question as evidence of "other crimes, wrongs, or acts." The Horner farm truck evidence is better described as direct evidence of the crime charged. Parts of the Horner farm truck were found with the red 1987 Chevrolet pick-up truck that Ballew had reported stolen. The license plate assigned to the Horner farm truck had been on the red 1987 Chevrolet pick-up truck. The evidence further showed that a Missouri Director of Revenue number found on the red truck came from the Horner farm truck and that Ballew was the owner of the Horner farm truck at the time it was seized by the Missouri State Highway Patrol.

■ Ballew was charged with mail fraud and wire fraud in this case, both of which contemplate a "scheme or artifice to defraud." 18 U.S.C. §§ 1341, 1343. It is obvious that parts were switched between the Horner farm truck and the red truck to conceal the identity of the red truck and thus successfully carry out Ballew's scheme to defraud his insurance company. Direct evidence of the crime charged is not subject to the heightened scrutiny of Rule 404(b). *United States v. Aranda,* 963 F.2d 211, 213–14 (8th Cir.1992). We find no abuse of discretion by the District Court in its denial of Ballew's objections to the admission of this evidence.

■ Even if we were convinced that Rule 404(b) applied to the Horner farm truck evidence, we would hold that it met the rule's requirements for the admissibility of other acts evidence. When assessing the admissibility of evidence under Rule 404(b), courts may consider three factors: (1) whether the evidence is relevant to a material issue other than the defendant's character, (2) whether the other act is similar in kind and reasonably close in time to the acts charged,[4] and (3) whether sufficient evidence exists to support a finding by the jury that the defendant committed the prior act.[5] *See United States v. Drew,* 894 F.2d 965, 970–71 (8th Cir.1990). If the evidence is admissible under Rule 404(b), the court still may exclude it if its probative value is substantially outweighed by its potential for unfair prejudice. *Id.* at 971; *see also* Fed.R.Evid. 403.

■ The government argued, and the District Court agreed, that the Horner farm truck evidence was relevant to either intent or motive; as it tended to show that Ballew was switching parts and license plates between the trucks to prevent the insurer from discovering that Ballew still possessed the truck he had reported stolen. Ballew disingenuously argues that intent was not a material issue because he never contended that his false insurance claim was a mistake or an accident. Intent to defraud, however, is an element of both mail fraud, *United States v. Noland,* 960 F.2d 1384, 1388 (8th Cir.1992), and wire fraud, *United States v. Mills,* 987 F.2d 1311, 1314 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 403, 126 L.Ed.2d 351 (1993).[6] The government must introduce

---

4. As noted above, we believe this evidence was not only similar in kind and close in time to the offense charged but was direct evidence of the crime charged. No further discussion of this part of the Rule 404(b) test is necessary.

5. The trial testimony of Sergeant (now Lieutenant) Dennis A. Overbey of the Missouri State Highway Patrol and Charles Chatman clearly satisfies this part of the Rule 404(b) test for admissibility. Evidence of prior bad acts need not be corroborated in order to be admissible.

*See United States v. Leisure,* 807 F.2d 143, 145 (8th Cir.1986).

6. The two statutes provide for the punishment of those who, "having devised or intending to devise any scheme or artifice to defraud," use the mails or interstate wire, radio or television communication "for the purpose of executing such scheme or artifice." 18 U.S.C. §§ 1341, 1343. We have held that the word scheme in the mail fraud section, which is virtually identical to the wire fraud section, "connotes some degree of

sufficient evidence to prove each element of the charged offenses beyond a reasonable doubt in order to avoid a judgment of acquittal. *United States v. Barragan,* 915 F.2d 1174, 1177 (8th Cir.1990). We conclude that even if Rule 404(b) applies to the Horner farm truck evidence the District Court did not abuse its discretion by admitting this evidence.

### B.

Ballew also contends that his conviction should be reversed because the District Court erred when it overruled his motion for a judgment of acquittal. Ballew argues that the government failed to produce sufficient evidence of his intent to defraud for the jury to find him guilty beyond a reasonable doubt.[7] We disagree.

■ This court will reverse a conviction for insufficient evidence only when we conclude that no reasonable trier of fact could find guilt beyond a reasonable doubt. *United States v. Behr,* 33 F.3d 1033, 1035 (8th Cir.1994). We must review the evidence in the light most favorable to the government and "accept all reasonable inferences supporting the verdict." *Id.*

■ In this case, the record clearly establishes that the government offered sufficient evidence to prove intent to defraud beyond a reasonable doubt. John L. Coleman, the MIC representative who returned Ballew's telephone call, testified that during their phone conversation Ballew reported his truck had been stolen in New Orleans. The phone conversation was recorded, and the government introduced the tape into evidence. The government also produced the claim forms signed by Ballew as well as the envelope in which they were mailed to MIC, and showed that MIC paid Ballew's claim in November 1987. In addition, the govern-

ment offered evidence showing that the truck in question eventually was found at the Chatman farm and that Ballew was in possession and control of the truck. Charles Chatman testified that his long-time friend Ballew had a key to the storage garage on the Chatman farm where the red truck was found, and that Ballew brought the red truck to the farm for storage sometime during 1988. Prior to that, Ballew had kept the truck hidden at his motorcycle and boat shop. Chatman also testified that the bumper and license plate found loose in his garage had been on the red 1987 Chevrolet. State highway patrol investigators later learned that the license plate was registered to the Horner farm truck owned by Ballew.

■ Ballew argues that the evidence is insufficient because Chatman's testimony was "inherently incredible." He bases this argument on the fact that Chatman was charged with the theft of several of the trucks found on his farm, and contends that this makes suspect Chatman's testimony as to Ballew's possession and control of the red truck found on Chatman's farm. This argument fails. Accomplice testimony is sufficient to support a conviction if it is not insubstantial on its face. *United States v. Drews,* 877 F.2d 10, 13 (8th Cir.1989). Chatman's testimony is not insubstantial on its face. Moreover, the credibility of witnesses is for the trier of fact to determine. In this case, both Chatman and Ballew testified. The jury's verdict finding Ballew guilty indicates that the jury credited Chatman's testimony and discredited Ballew's testimony. Even if our opinion of the witnesses in this case differed from that of the jury, "it is not our function to pass upon the credibility of witnesses or to attempt to weigh the evidence and substitute our judgment for that of the jury." *United States v. Prionas,* 438 F.2d 1049, 1052 (8th Cir.), *cert. denied,* 402

planning by the perpetrator, and thus it must be proved that a defendant acted with an intent to defraud." *DeMier v. United States,* 616 F.2d 366, 369 (8th Cir.1980).

**7.** We note that parties on appeal may not generally have their cake and eat it too. In this part of his argument, Ballew claims the government did not offer sufficient evidence of his intent to de-

fraud to support his conviction. On the other hand and as discussed above, Ballew argues that the District Court should be reversed for admitting the Horner farm truck evidence because intent was not an issue in the case. At the risk of stating the obvious, we note that such blatantly inconsistent arguments do not inspire confidence in the credibility of the appellant's brief.

U.S. 977, 91 S.Ct. 1683, 29 L.Ed.2d 144 (1971).

We conclude that the evidence is sufficient to support Ballew's convictions and that the District Court therefore did not err in denying Ballew's motion for a judgment of acquittal.

### III.

■ Attacking his sentences, Ballew argues that the District Court erred when it applied the Sentencing Guidelines to the facts of his case. Specifically, he argues that the court (1) improperly considered the four truck thefts described in part I of this opinion as part of his relevant conduct because the thefts were neither established by reliable evidence nor relevant to the offenses of conviction; and (2) erred when it found that the offenses involved more than minimal planning and that Ballew was an organizer or leader of the criminal activity. We review a district court's application of the Guidelines de novo, and its factual findings for clear error. *United States v. Frieberger,* 28 F.3d 916, 918 (8th Cir.1994). Finding no errors of law or clearly erroneous findings of fact, we affirm Ballew's sentences.

### A.

■ In fraud cases, the Sentencing Guidelines provide for a graduated increase in the base offense level dependent on the amount of the loss. U.S.S.G. § 2F1.1 (1987). The District Court considered evidence of Ballew's involvement in the theft of four trucks at sentencing and decided that the trucks were worth $68,026. Adding the $10,-900 loss to the defrauded insurance company, the court calculated the total loss to be $78,-926. For losses of $50,001 to $100,000, the Guidelines require a five-level increase to the base offense level. § 2F1.1(b)(1)(F).

■ Ballew argues that the evidence of his involvement in the other thefts is unreliable, but that even if reliable, the evidence does not constitute evidence of "relevant conduct." When sentencing a defendant, a district court may consider uncharged, relevant conduct that has been established by a preponderance of the evidence. *See United States v. Gooden,* 892 F.2d 725, 727–28 (8th Cir.1989), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2594, 110 L.Ed.2d 274 (1990). Whether Ballew was involved in the theft of the trucks is a question of fact. We review the factual findings of a district court at sentencing for clear error. *United States v. Cabbell,* 35 F.3d 1255, 1260 (8th Cir.1994). After carefully reviewing the record, we cannot say that the District Court clearly erred in finding that Ballew stole three of the other trucks and benefitted from the theft of the fourth. Whether such conduct was relevant to the offense charged, however, is a closer question.

■ The Sentencing Guidelines state that relevant conduct includes:

> all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.

U.S.S.G. § 1B1.3(a)(2) (1987). The finding by the District Court that the truck thefts and subsequent switching of parts were connected to a continuing scheme to defraud Ballew's insurance company is a factual finding subject to review under the clearly erroneous standard. *See Gooden,* 892 F.2d at 728. Having carefully reviewed the record, we cannot say that the District Court's finding is clearly erroneous.

The District Court found that Ballew had to prevent law enforcement officials from discovering the red 1987 Chevrolet pick-up truck in order fully to carry out his scheme to defraud his insurance company. Ballew was not content, however, with receiving the insurance money and destroying the truck. He wanted to continue using it. To do so, he had to disguise the truck by partially rebuilding it with parts from other trucks and displaying license plates registered to another truck. Thus, stealing and using parts from the other trucks was integral to Ballew's concealment and continuing use of the truck and was inextricably bound to the "scheme or artifice to defraud" of which the jury found Ballew guilty. We hold that the record in this case adequately supports the finding of the District Court that these thefts were conduct relevant to the offenses of conviction

and that the court correctly added five levels to Ballew's base offense level.

## B.

Finally, Ballew contends that the District Court clearly erred when it found that the offense of conviction involved more than minimal planning and that Ballew was an organizer or leader of the criminal activity. We disagree.

 The Guidelines provide for a two-level increase in fraud cases if the offense involved "more than minimal planning." U.S.S.G. § 2F1.1(b)(2)(A) (1987). The commentary to the Guidelines defines more than minimal planning as "more planning than is typical for commission of the offense in a simple form" or "significant affirmative steps ... taken to conceal the offense." § 1B1.1, comment. (n. 1(f)). The District Court found that the commission of this offense required more than minimal planning, and we review such a finding only for clear error. *United States v. Wilson,* 955 F.2d 547, 550 (8th Cir.1992).

 As the government argued at the sentencing hearing, mail and wire fraud charges predicated on insurance fraud normally take the form of destruction of the insured property by the insured. In this case, Ballew developed an elaborate scheme involving a staged theft in New Orleans and the subsequent masking of the vehicle so it could not be identified and he could continue to use it. That same conduct, designed to avoid detection, also constitutes "significant affirmative steps ... taken to conceal the offense." The District Court's finding that the offense involved more than minimal planning, therefore, is not clearly erroneous.

 The Guidelines also provide for a two-level increase if the defendant was an "organizer, leader, manager, or supervisor" in criminal activity involving less than five participants. U.S.S.G. § 3B1.1(c) (1987). We review the sentencing court's factual determination regarding a defendant's role in the offense under the clearly erroneous standard. *United States v. Lucht,* 18 F.3d 541, 555 (8th Cir.1994), *cert. denied,* —— U.S.

——, 115 S.Ct. 363, 130 L.Ed.2d 316 (U.S. 1994).

 As discussed above, the District Court found that the truck thefts were a part of the scheme to defraud, and we have held that the court's finding is not clearly erroneous. The District Court further found that Ballew was "the moving force" and "the most culpable of all the parties involved." Of the three individuals involved, Ballew stood to gain the most: ownership of the red 1987 Chevrolet pick-up truck free from his loan from Ford Motor Credit Corporation, a new diesel engine for the same vehicle from the stolen Dodge truck, and new trucks for his farming business. Additionally, Ballew enlisted Chatman and Hastings to assist him in the theft and concealment of the trucks. We hold that the District Court's finding that Ballew was an organizer or leader of the criminal activity is not clearly erroneous.

## IV.

For the reasons stated, Ballew's convictions and sentences are affirmed.

HEANEY, Senior Circuit Judge, dissenting.

I write to dissent on one issue only. In my view, the majority has stretched the concept of "relevant conduct" past the breaking point. The majority holds that Ballew's sentence for mail and wire fraud can be enhanced due to his alleged involvement with the theft of several trucks nearly eighteen months after the commission of the offense for which he was convicted. *See* U.S.S.G. § 1B1.3(a)(2) and § 2F1.1(b)(1)(F). I believe that the link between the stolen trucks and the insurance fraud is entirely too tenuous to constitute relevant conduct, and would hold the district court's finding to be clearly erroneous.

To sort out when uncharged conduct comprises part of a common scheme or plan, this court has embraced the test set forth in *United States v. Hahn,* 960 F.2d 903, 910 (9th Cir.1992), the essential components of which are "similarity, regularity, and temporal proximity." *See, e.g., United States v. Chatman,* 982 F.2d 292, 294 (8th Cir.1992).

Only traces of these three elements are present in the case before us.

The degree of temporal proximity between the 1989 truck thefts and the 1987 insurance fraud is small. No ascertainable pattern of regularity links the truck thefts with Ballew's insurance fraud. At sentencing, Corporal Dennis Overbey of the Missouri State Highway Patrol linked Ballew to the theft of three trucks in only two separate incidents during March or April of 1989. Sent. Tr. at 27, 28, 30, 32, 56–60. The government produced no evidence of ongoing criminal activities between 1987 and 1989. Given their remoteness and isolation from the false insurance claim, the truck thefts cannot be considered a regular component of Ballew's wire and mail fraud.

Where regularity is lacking, there must be "a strong showing of substantial similarity." *Hahn*, 960 F.2d at 911. No such strong showing has been made in this case. The insurance fraud and the truck thefts were different crimes with different victims, different ends, and different modi operandi. There were no common accomplices, because Ballew was the sole perpetrator of, and beneficiary from, the 1987 insurance fraud. The majority apparently rests its decision on a finding of common purpose, believing that the truck thefts occurred in order to conceal Ballew's wire and mail fraud. Yet when questioned about the purpose of the truck thefts, Officer Overbey testified that "[t]he vehicles were to be used [in] a custom combining operation that Mr. Clayton Hastings and Mr. Cecil Ballew were involved in [as] partners together." Sent. Tr. at 28. The alleged participation of Hastings and Charles Chatman in the truck thefts strongly indicates that the trio's purpose was to steal trucks, not to cover up Ballew's earlier insurance fraud. If anything, the record supports the conclusion that the part-swapping occurred to conceal the thefts of the stolen trucks themselves.

In *Hahn*, the Ninth Circuit pointed out that "when illegal conduct does exist in 'discrete, identifiable units' apart from the offense of conviction, the Guidelines anticipate a separate charge for such conduct." *Hahn*, 960 F.2d at 909 (quoting U.S.S.G. § 1B1.3

comment). The insurance fraud and the truck thefts are such discrete, identifiable units of crime. The majority's conclusion that the truck thefts and swapping of components were "integral to Ballew's concealment and continuing use of the truck" that he fraudulently reported stolen is crucially undermined by the fact that Ballew used the truck for eighteen months without any change in components or appearance. Sent. Tr. at 31. The purpose of the part-swapping was first and foremost to disguise the stolen trucks, not to shield Ballew's false stolen vehicle report and fraudulent insurance claim. It simply stretches credulity to conclude that the 1989 activities were "integral" to the insurance fraud for which Ballew was convicted.

While I agree that the later truck thefts and swapping of parts probably had the ancillary effect of further cloaking Ballew's earlier insurance fraud, the asserted connection is too tenuous to bind together these two discreet, identifiable units of crime into a single continuing offense. At trial, the prosecutor certainly treated the two crimes as separate offenses. The prosecutor told the jury that Ballew "had committed mail fraud and wire fraud in order to obtain insurance money from these two insurance companies." V Trial Tr. at 215. The jury was also told that Chatman "uncovered for us ... a separate scheme." *Id.* at 216. I also note that the Kentucky commonwealth attorney agreed to dismiss with prejudice his indictment of Ballew and Hastings for two of the truck thefts due to insufficient evidence. The state's "only evidence [was] the testimony of Charles Chatman, an unindicted individual on whose property the stolen vehicles were discovered and recovered." *Commonwealth of Kentucky v. Ballew and Hastings*, Calloway Cir.Ct. No. 91–CR–005 (May 28, 1993). The record simply lacks sufficient evidence of commonality, similarity, regularity, or temporal proximity to hold Ballew accountable for truck theft through his conviction for wire and mail fraud.

I would remand this case to the district court with instructions to resentence Ballew without the five-level enhancement for relevant conduct deriving from the truck thefts.

Consequently, I would direct the district court to reassess its additional enhancements, all of which depend in part upon the finding of relevant conduct.