United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

No.  97-1812EMCG

| | |
|---|---|
| United States of America | * |
| | * |
| Appellee, | * Appeal from the United States |
| | *    District Court for the |
| vs. | * Eastern District of Missouri |
| | * |
| LeRoy Harris, Jr. | * |
| | * |
| Appellant. | * |

Appellant's motion for leave to file his petition for rehearing out of time has been considered by the Court and is hereby granted.  The Clerk is directed to file on the record the petition for rehearing by the panel.

Upon review, the petition for rehearing is granted and the judgment dated December 10, 1997, is hereby vacated.  The Clerk is directed to file the attached opinion in substitution for this Court's opinion filed December 10, 1997, and enter a new judgment.

March 3, 1998

Order Entered at the Direction of the Court:

Clerk, U.S. Court of Appeals, Eigth Circuit

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1812
_____

United States of America,

        Appellee,

v.

LeRoy Harris, Jr.,

        Appellant.

Appeal from the United States District
Court for the Eastern District of Missouri.

_____

Submitted: September 8, 1997
Filed: March 3, 1998

_____

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

LeRoy Harris challenges his conviction for being a felon in possession of a firearm, arguing that the jury should not have been informed of the number and nature of his multiple prior felonies because he offered to stipulate to his felon status. Because we find that any error was harmless, we affirm.

## I.    BACKGROUND

While executing a valid search warrant for a Cape Girardeau, Missouri, residence, police seized a Revelation twelve-gauge shotgun. LeRoy Harris, whom

police believed resided at the house, was charged with being a felon in possession of a firearm.  See 18 U.S.C. §§ 922(g)(1) and 924(e).  The indictment listed six predicate felonies: carnal knowledge of a female under sixteen, attempt to burn property, rape, forgery, and two convictions for breaking and entering.  Harris entered a plea of not guilty and was tried by a jury.  Before trial, Harris offered to stipulate to his felon status, and moved in limine to exclude reference to the name and nature of his convictions, or, in the alternative, to limit the government to proving only the forgery conviction.  The district court[1] ruled that evidence of the sex crimes would be unduly prejudicial, but denied Harris's motion as to the other convictions.  In its case in chief, the government offered certified copies of the sentence and judgment forms for four of Harris's prior felonies.  The government also presented the testimony of three police officers stating that Harris had told them that the gun was his; a witness who reported that she had observed her husband trade the gun to Harris in exchange for drugs; and evidence that Harris had listed this address as his residence on his driver's license, hunting license, and automobile registration.   In defense, Harris testified that he did not actually reside in the house, but simply stayed there several nights per week and that, in any event, the gun was not his.  The jury convicted Harris, who appeals.

## II.    DISCUSSION

Harris argues that the court's refusal to accept his offer to stipulate violates the Supreme Court's directive in Old Chief v. United States, 117 S. Ct. 644 (1997).[2]  In Old Chief, the Court held that when a defendant makes an offer to stipulate which is specific enough to establish felon status for purposes of 922(g), and when "the prior conviction is for an offense likely to support conviction on some improper ground,  . . .

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

[2]Old Chief had been argued at the time of Harris's trial, and was decided after his conviction, but before his sentencing.

the risk of unfair prejudice . . . substantially outweigh[s] the discounted probative value of the record of conviction." Id. at 655.

Although the parties argue about whether Harris's offer to stipulate was sufficient to trigger Old Chief, we do not need to reach that issue. To warrant relief under Old Chief, the asserted error must not be harmless. United States v. Blake, 107 F.3d 651, 653 (8th Cir. 1997). See also, Old Chief, 117 S. Ct. at 656 n.11 (expressing no opinion on whether failure to exclude record of conviction was harmless). When evidence of a defendant's guilt is overwhelming, the Old Chief violation is harmless. See, e.g., Redding v. United States, 105 F.3d 1254, 1255 (8th Cir. 1997) (habeas petitioner not entitled to relief under Old Chief given the overwhelming evidence of guilt). The government concedes that in this case it must bear the burden of establishing harmlessness. See United States v. Olano, 507 U.S. 725, 734 (1993). We find that the govenment has carried that burden here. The testimony of the police officers, to whom Harris admitted owning the gun, and the testimony of the witness who saw Harris purchase the gun, in combination with other evidence that Harris lived at the house, was overwhelming evidence that Harris did, in fact, possess the weapon. Thus, we find any error in rejecting Harris's offer to stipulate to felon status was harmless.

## III.   CONCLUSION

We have carefully considered the remainder of Harris's arguments and find them to be without merit. The judgment of the district court is affirmed.

HEANEY, Circuit Judge, dissenting.

I cannot conceive of a better case than the one before us to support my belief that the harmless error rule should not apply under Old Chief. Nonetheless, it is clear that if the standard is applied, the measurement employed by the majority misstates the threshold for requiring reversal. Moreover, even under the standard applied by the

majority, the government failed to meet its burden of showing that Harris received a fair trial despite the trial court's error.  See United States v. Olano, 507 U.S. 725, 734 (1993).

The Supreme Court's rule in Old Chief is based on the soundest principles of judicial fairness:  If a defendant is willing to stipulate to his or her status as a prior felon where that status is an element of the charged crime, there can be no other purpose for or result from introducing evidence of the nature and number of the defendant's prior felonies than to convince the jury that the defendant is a bad person likely to do bad things.  In a case such as this, where the vast majority of the evidence consisted of government witness testimony that is refuted by the defendant on the stand, the government all but destroys Harris's defense by introducing evidence of his prior bad acts, which are wholly unnecessary to the government's case.

I support the usefulness of the harmless error rule as a means to preserve judicial resources where an error has had no effect on the outcome of a trial.  In the Old Chief context, however, the Supreme Court's rule could not be clearer that the number and nature of a defendant's prior felonies are impermissible where the defendant will stipulate to his or her status as a felon.  See Old Chief, 117 S. Ct. at 655-56.  The government can provide no rational argument for failing to abide by such a straight-forward rule other than to impermissibly destroy a defendant's character and credibility as a witness.  The government should not be entitled to the benefit of the harmless error rule under these circumstances.

If we assume for the argument's sake that the harmless error standard is to be applied under Old Chief, we must reverse a conviction where the jury might have been "substantially swayed" by improperly admitted evidence.  United States v. Davis, 936 F.2d 352, 355 (8th Cir. 1991) (citation omitted).  Old Chief dictates that the risk of prejudice is "substantial whenever the official record offered by the government would be arresting enough to lure a juror into a sequence of bad character reasoning."  117

S. Ct. at 652. There is little doubt that the jury's exposure to the number and nature of four of Harris's prior felony convictions was arresting enough to lure jurors down that road. See United States v. Blake, 107 F.3d 651, 652 (8th Cir. 1997) (considering evidence of four prior felony convictions along with other errors in reversing conviction).

Rather than applying the language of Old Chief, the majority articulates a standard that holds an error to be harmless where evidence of the defendant's guilt was "overwhelming." Ante at 3. I am unfamiliar with this standard for harmlessness.[3] The proper standard for determining whether a trial court's error is harmless does not require us to determine whether evidence which was properly admitted supports the jury's verdict. Rather, we are to consider whether we can state with confidence that the improperly admitted evidence had no effect on the jury's deliberations. In this context, where the improper evidence affected Harris's entire defense, not only am I unable to state with confidence that the presentation of Harris's prior felonies had no effect on the jury's deliberations, I am confident that the improper evidence was arresting enough to lure the jury into a sequence of bad character reasoning. For that reason, Harris should receive a new trial.

---

[3]The majority cites Redding v. United States, 105 F.3d 1254, 1255 (8th Cir. 1997) to support its proposition. Redding affirmed per curiam a defendant's conviction, despite an Old Chief violation, without a recitation of the relevant facts. Redding, 105 F.3d at 1254-55. In declaring the trial court's error to be harmless in light of the "overwhelming evidence of [the defendant's] guilt," Redding cites United States v. Ballew, 40 F.3d 936, 941 (8th Cir. 1994). Redding, 105 F.3d at 1255. Ballew, which does not contain an Old Chief violation, merely states that the harmless error rule requires reversal "when we believe that the error has had more than a slight influence on the verdict." Ballew, 40 F.3d at 941(citing United States v. DeAngelo, 13 F.3d 1228, 1233 (8th Cir. 1994)).

Even if we apply the majority's standard for harmlessness, the government has failed to carry its burden to show Harris received a fair trial. The majority states that "[t]he testimony of the police officers, to whom Harris admitted owning the gun, and the testimony of the witness who saw Harris purchase the gun," was overwhelming when considered with Harris's periodic stays at the house in which police found the gun. Ante at 3. This reasoning relies entirely on the majority's view that the government's witnesses were credible and Harris was not. We have stated time and time again that the credibility of witnesses is a determination for the jury. United States v. Wright, 119 F.3d 630, 634 (8th Cir. 1997) (citations omitted); United States v. Ballew, 40 F.3d 936, 942 (8th Cir. 1994). Absent the improper evidence introduced by the government, the jury could have found that Harris was the more credible witness. Were the jury to so find, the remaining evidence would certainly fail to support a conviction.

The cases cited by the majority do not illustrate what constitutes "overwhelming evidence" to sustain a verdict over a trial court's error. In United States v. DeAngelo, 13 F.3d 1228, 1235 (8th Cir. 1994), cited in Ballew for its statement of the harmless error standard, we upheld a defendant's conviction for armed bank robbery despite a non-Old Chief error. We held that even if the trial court erred by admitting a tape recording of death threats made by the defendant, such error would be harmless given the remaining evidence that the defendant committed armed robbery. DeAngelo, 13 F.3d at 1233. The remaining evidence included a number of eyewitnesses who stated that they believed the defendant used a real gun, pictures from the bank showing the defendant holding a gun, and the defendant's testimony regarding how he used and fired the gun during the robbery. Id. at 1233.

The evidence against Harris falls far short of the evidence against the defendant in DeAngelo. The government's evidence against Harris merely consisted of controverted testimony of police officers and a woman who claimed she saw Harris purchase the gun, testimony that Harris periodically lived at the house where police

found the gun, and the fact that Harris had a hunting license. The record shows no evidence of Harris's fingerprints on the weapon, see United States v. Hernandez, 109 F.3d 1450, 1453 (9th Cir. 1997) (considering a lack of fingerprints on a weapon as a significant factor in determining whether evidence of possession of a weapon was overwhelming), nor did any of the officers see Harris in possession of the weapon. Moreover, in contrast to DeAngelo, Harris testified that he neither owned the gun nor told the officers that he owned the gun.

The trial court's Old Chief violation tainted the bulk of the government's evidence against Harris. I do not agree that the remaining evidence approaches the majority's "overwhelming" threshold. Consequently, even under that standard, we should reverse Harris's conviction.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-